JOE MACK GANAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ganas v. Commissioner
Docket No. 6533-88
United States Tax Court
T.C. Memo 1990-143; 1990 Tax Ct. Memo LEXIS 167; 59 T.C.M. (CCH) 151; T.C.M. (RIA) 90143; March 19, 1990
Leamon Andrew Smith, for the petitioner. Charles Baer, for the respondent. *169 PETERSON
*293 MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180, 181, and 182. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioner's Federal income taxes plus certain additions to tax for the years 1982, 1983, 1984, and 1985 as indicated below. *294 Additions to tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2) [1]
1982
$ 3,769
$ 434
$ 188
applicable
1983
3,478
408
174
applicable
1984
3,100
375
159
applicable
1985
3,285
N/A
164
applicable
The issues to be decided are (1) whether petitioner's claimed net operating loss carryovers resulting from a casualty loss which occurred in 1981 are substantiated; (2) whether petitioner *170 properly substantiated a second casualty loss which occurred in 1984; (3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file tax returns as to the years 1982, 1983, and 1984; and (4) whether petitioner is liable for the additions to tax under section 6653(a)(1) and section 6653(a)(2) for negligence or an intentional disregard of rules or regulations. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of his petition, petitioner's legal residence was in Naylor, Georgia. Petitioner has been a mixer/baker at Cracklin' Good Bakery making saltine crackers for the past twelve years. He has received small raises in his hourly wages each year. His annual salary was between $ 14,000 and $ 17,000 during the years at issue. His only other source of income was a small amount of interest income. 1981 Casualty Loss
Petitioner acquired the family home plus twelve acres of farmland in 1969. He first inherited a one-third interest in the property upon the death of his father in the early 1950's. In 1969, *171 when his mother died, petitioner and his sister inherited the balance of the interest in the house and an undisclosed amount of farmland. On January 11, 1969, petitioner and his sister split up the farmland, with petitioner acquiring a 100% interest in the house and twelve acres and his sister acquiring a 100% interest in the balance of the farmland. Starting in 1965, petitioner began to build an addition to the house. This addition was primarily a do-it-yourself project built over the course of many years. Petitioner's brother-in-law worked for him on the project for many years ending in 1980, and was paid approximately $ 6,500 for his labor. During the years in question petitioner was married, although he and his wife were separated. His wife helped finance an undisclosed portion of the remodelling project. In March of 1980, petitioner received a loan in the amount of $ 10,530 from Farmers and Merchants Bank in Lakeland, Georgia, for the purpose of paying creditors for expenditures made for remodelling his house. For purposes of this loan, petitioner's property was valued in 1980 by the bank as follows: Improvements:
$ 28,500 (1900 sq. ft. at $ 15.00 per foot)
Land:
$  2,000.
*172 For purposes of the local property tax, petitioner's real estate was valued in 1970 at $ 1,020 at 40% of value, for a full value of $ 2,550. In 1980 and 1981 for purposes of the property tax, petitioner's property was valued at $ 8,531 at 100% of value. From that total, the amount of $ 2,596 was allocated to petitioner's house, and the amount of $ 5,935 was allocated to petitioner's land. In 1981 a fire completely destroyed petitioner's house and its contents. The house was insured for $ 8,000 and his personal belongings were insured for $ 4,000. This coverage was not based upon any valuation made by the insurance company. Petitioner filed a claim and received $ 12,000 pursuant to this insurance policy. 1984 Casualty Loss
In 1984, two teenage boys were camping out and drinking beer near petitioner's property. On a portion of that property in an overgrown field were approximately nineteen old automobiles scattered randomly over the property. The automobiles were not in running condition nor did they have inflated tires. The field looked like a typical junkyard. The boys took a long pipe or similar instrument and bashed in the windshields and rear windows in *173 a large number of these automobiles. Petitioner filed a complaint against these perpetrators and both boys negotiated a plea of a misdemeanor offense for damage exceeding one hundred dollars. Petitioner did not receive any restitution for the damage done to his automobiles. Petitioner *295 requested restitution many times. The first recorded occasion he requested $ 7,500. The second time he asked for $ 12,000. At the arraignment for this crime he asked for $ 14,000. His final request was on the day of the pre-trial, at which time he requested restitution in the amount of $ 24,000. After the automobiles were damaged, petitioner did not take any actions to repair or mitigate the damage done. The windshields and rear windows were not covered, and, therefore, the interiors of the cars suffered further damage from the sun and rain. Petitioner claimed a casualty loss of $ 33,700 on his 1981 Federal income tax return (1981 return) which was filed in 1984. In December of 1985, petitioner filed an amended 1981 return (amended return) which increased his claimed casualty loss to $ 63,100. Petitioner claimed the following uncompensated losses: House
[2] $ 43,000 Personal Belongings
9,500 Farm-type tractor
3,000 1971 Pontiac
500 1963 Ford truck
200 6 Pecan Trees
3,000 Storage Building
4,000 Total Alleged Loss
$ 63,200 Statutory Limitation
(100)
Claimed Casualty Loss
$ 63,100 *174 Petitioner utilized $ 13,838 of this claimed casualty loss to offset his adjusted gross income of $ 15,538 in 1981. In January of 1985, petitioner filed his 1982 Federal income tax return, which reported a net operating loss carryover from the casualty loss of $ 19,762, reflecting the casualty loss as claimed on the 1981 return. Petitioner utilized $ 17,193 of the carryover to offset his adjusted gross income in 1982. In November of 1985, petitioner filed his 1983 Federal income tax return which reported a net operating loss carryover from the 1981 casualty loss of $ 32,069 (from the casualty loss as claimed on the amended return). Petitioner utilized $ 17,388 of the carryover to offset his adjusted gross income in 1983. In May of 1986, petitioner filed his 1984 Federal income tax return which reported a net operating loss carryover from the 1981 casualty loss of $ 14,681. Petitioner also claimed an alleged casualty *175 loss of $ 27,740 which was from the vandalism to petitioner's cars. Petitioner utilized all of the net operating loss carryover and $ 2,368 of the 1984 casualty loss to offset his adjusted gross income in 1984. In July of 1986, petitioner timely filed his 1985 Federal income tax return which reported a net operating loss carryover of $ 25,372 from the 1984 casualty loss. Petitioner utilized $ 17,888 of the net operating loss carryover to offset his adjusted gross income in 1985. Petitioner did not pay any Federal income tax for the years 1981 through 1985. Petitioner did not carryback any of these net operating losses to offset income in years prior to the respective casualties. The deficiencies determined by respondent were created solely by the disallowance of these alleged casualty losses and resulting net operating loss carryovers. Respondent contends petitioner has not substantiated his claimed losses. Therefore, respondent disallowed all net operating losses and casualty loss deductions claimed by petitioner. Additionally, respondent claims petitioner was negligent or disregarded rules and regulations in filing his returns with the claimed losses; and, that petitioner *176 was delinquent for the years 1982, 1983, and 1984 because of untimely filings of his Federal income tax returns. Petitioner contends he has substantiated all losses claimed. Petitioner also contends he was not negligent and he did not disregard rules or regulations. Petitioner concedes his tax returns were not timely filed, but contends the untimely filing was due to reasonable cause. OPINION In deciding petitioner's deficiencies for the years 1982-1985, we have jurisdiction to consider the facts with relation to the Federal income taxes for 1981 since it is necessary to do so in order to correctly decide the deficiencies for the years at issue. Sec. 6214(b). A casualty loss is deductible in limited circumstances under section 165(c)(3) for uncompensated losses. In general, the loss is allowable in the year the loss is sustained; however, if casualty losses exceed adjusted gross income, they are treated the same as net operating losses and may be carried back/carried over in accordance with section 172. Sec. 172(d)(4); sec. 172(b); sec. 1.172-3(a)(3)(iii), Income Tax Regs.
*177 The amount of the casualty loss that is allowable is determined under section 165(b) and section 1.165-7(a)(2), Income Tax Regs. The general rule is that the amount deductible is the amount which is equal to the fair market value of the property immediately before the casualty *296 reduced by the fair market value of the property immediately after the casualty, but not in excess of the property's adjusted basis as determined under section 1.1011-1, Income Tax Regs.Sec. 1.165-7(b), Income Tax Regs.
Petitioner has the burden of proving the amount of his casualty loss. Rule 142(a). This includes proving the adjusted basis of his property. It is well established that where a taxpayer fails to prove his adjusted basis of the property involved, no casualty loss deduction is allowable. Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Millsap v. Commissioner, 46 T.C. 751, 760 (1966), *178 affd. 387 F.2d 420 (8th Cir. 1968). 1981 Casualty Loss
Petitioner has provided very little beyond self-serving statements concerning his adjusted basis and fair market value in the house and property that was destroyed by the fire in 1981. He has provided several handwritten lists of property lost in the fire with values attached; however, these values were written down just prior to the trial, over seven years after the fire and ten to thirty years after petitioner acquired most of the property at issue. Petitioner had little to substantiate his claims. Self-serving statements without more are inadequate to establish a basis and, hence, a value which will establish the amount of the loss. See Marcus v. Commissioner, T.C. Memo. 1988-3. It is clear, however, that petitioner lost his house and belongings in the 1981 fire. It is also clear that petitioner had some basis in the house. From the record, we will piece together petitioner's adjusted basis in the property as compared with the amount of change in fair market value before and after *179 the fire. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). As discussed above, the amount of the casualty loss that is deductible is the lesser of these two figures. Sec. 1.165-7(a)(2), Income Tax Regs.
Petitioner inherited one-third of the house when his father died in the early 1950's and acquired the rest of the house when his mother died in 1969. His initial adjusted basis in one-third of the house would be equal to its fair market value on the date of his father's death. His adjusted basis in his remaining two-thirds interest in the house would be equal to the fair market value of the house on the date of his mother's death. Sec. 1014(a); Timanus v. Commissioner, 32 T.C. 631 (1959), affd. 278 F.2d 297 (4th Cir. 1960). Petitioner provided no evidence from which we could determine the fair market value of the house at either the time of his father's death or at the time of his mother's death. Therefore, we are unable to allow petitioner any amount to include in the adjusted basis of the house at the time of inheritance. However, petitioner has submitted evidence to show that his adjusted basis *180 in the house at the time of the fire in 1981 was $ 17,030, based upon the cost of labor and materials incurred for improvements made to the house in subsequent years. We must next decide the fair market value of petitioner's house in 1981. Although petitioner's property was valued at $ 8,531 in 1980 and 1981 for purposes of the local property tax, it is clear those figures are inaccurate. The valuation procedure for local property taxes was very informal. Petitioner merely informed the assessor of any changes to his property. If there were no changes the valuation remained the same as the previous year. Petitioner testified that the assessor was an elderly gentleman whose main interest was in keeping his friends happy. In 1980 the property was valued at $ 28,500 by petitioner's bank for purposes of the $ 10,530 bank loan. We think this valuation properly reflects the value of petitioner's property prior to the fire. Since the money was used for unpaid remodelling bills and there is no evidence to show that the house substantially changed in value between 1980 and 1981, we find that the fair market value of petitioner's house at the time of the fire was $ 28,500. The fair *181 market value of petitioner's house and other improvements on the property after the fire was $ 0. Petitioner's casualty loss is the lesser figure of the change in fair market value and adjusted basis. That lesser figure is the adjusted basis of $ 17,030. Therefore, petitioner has substantiated a casualty loss for the house and other improvements in the amount of $ 17,030 for the 1981 casualty. Petitioner received $ 8,000 from his insurance company for his loss. This leaves a $ 9,020 casualty loss, after subtracting the $ 100 limitation. Sec. 165(c)(3). Petitioner also claimed a casualty loss in the amount of $ 9,500 for the loss of his household furniture. He was reimbursed by his insurance company in the amount of $ 4,000 for the contents of his house. After reviewing the record, we hold that petitioner did not substantiate an adjusted basis in the contents of his house in an amount greater than $ 4,000, and so he is denied a casualty loss deduction for his household goods. Petitioner claims additional casualty losses resulting from the fire as follows: Farm-type tractor
$ 3,000
1971 Pontiac
500
1963 Ford truck
200
6 Pecan Trees
3,000
Storage Building
4,000
Total Alleged
Miscellaneous Losses
$ 10,700
*182 *297 Petitioner has failed to carry his burden of proof as to his adjusted basis in any of the above property. Therefore, we deny petitioner a casualty loss as to these miscellaneous items. Petitioner's total casualty loss from the 1981 casualty is $ 9,020. Petitioner had adjusted gross income in the amount of $ 15,538 for the tax year 1981. Therefore, petitioner's adjusted gross income in 1981 would have offset the entire casualty loss. Accordingly, we hold there is no net operating loss from the 1981 fire casualty available as a carryover to offset income for the 1982, 1983, and 1984 tax years. 1984 Casualty Loss
Petitioner's evidence regarding the automobiles which were damaged from vandalism is self-serving. Petitioner provided a handwritten list of his cars and what he remembers paying for them over the past twenty years. Petitioner's witness, Dr. Russell (an antique car enthusiast and friend), testified regarding the fair market value of these cars prior to the vandalism. Dr. Russell's testimony was very vague and generalized. His list of cars included cars not on petitioner's list, and vice versa. Additionally, Dr. Russell listed a certain 1967 Chrysler twice. *183 The first time he indicated a value of $ 1,000 while the second time he indicated a value of $ 3,000. Petitioner valued this same car at $ 100 for purposes of licensing the car. With such inconsistencies and lack of substantiation, we cannot find this evidence to be credible. Petitioner has not met his burden of proving his adjusted basis in the automobiles. He also has failed to prove the fair market values of these automobiles prior to and subsequent to the vandalism. Petitioner alleges the automobiles were without value after being vandalized. However, only glass was damaged, not engines or other car parts which would have resale value. Dr. Russell testified that parts of the cars could be sold for more than the car as a whole was worth prior to the vandalism. Therefore, we must conclude that these cars were not worthless after the vandalism. Petitioner argues the cars held a lot of sentimental value for him. Also, that the cars were restorable prior to the vandalism and would have had great value after being restored. Unfortunately, under the Internal Revenue Code, loss of *184 sentimental value and loss of potential value are not deductible casualty losses. Sec. 1.165-7, Income Tax Regs.
Petitioner also contends the amount an appraiser determined it would cost to replace the glass destroyed should have some bearing on his casualty loss deduction. Section 1.165-7(a)(2)(ii), Income Tax Regs., only allows the cost of repairs to the property damaged as evidence of the loss of the value of the property if, among other factors, the repairs are actually made to the property and only restore the property to its value prior to the casualty. That is not the situation in the case before us. Petitioner did not make any repairs to the vandalized automobiles. Because petitioner has not met his burden of proving his adjusted basis in the automobiles, we have no choice but to deny him the casualty loss for the 1984 vandalism. Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968). *185 However, even if he had established his adjusted basis in the cars, he still failed to carry his burden of proof as to the difference in value in the cars prior to the vandalism and subsequent to the vandalism. The evidence pointed to little change in the resale value of these cars before and after the vandalism. Estimated replacement costs alone are not a valid measure of the actual loss a taxpayer incurs and, therefore, are not used as a measure of the deductible casualty loss. Sec. 1.165-7(a)(2)(ii), Income Tax Regs.
Pursuant to the above, petitioner is denied a casualty loss deduction for the vandalism that occurred to automobiles on his property on December 6, 1984. Respondent determined that petitioner was delinquent for the years 1982, 1983, and 1984, and, therefore, is subject to additions to tax for those years under section 6651(a)(1). Section 6651(a)(1) applies if the taxpayer fails to timely file a tax return unless such failure is due to reasonable cause *186 and not due to willful neglect. Petitioner does not dispute the fact that the returns were filed late. However, he contends that his records were destroyed in the fire and so there was reasonable cause for him to file the returns late. Additionally, petitioner claims he relied upon his attorney to timely file his returns. Although it is true that petitioner's prior records were destroyed in the 1981 fire, that does not excuse the delinquency of the filing of his Federal income tax returns for the years 1982, 1983, and 1984. Petitioner's records subsequent to the fire, including the records of petitioner's wage income, were not destroyed. Additionally, reliance on a tax professional to timely file does not excuse the delinquent filing of tax returns. United States v. Boyle, 469 U.S. 241 (1985). As the Supreme Court stated: "The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline *298 and then to meet that deadline * * *. United States v. Boyle, supra at 249. Therefore, we hold that *187 it was willful neglect for the returns at issue not to be timely filed. For the above reasons, the additions to tax under section 6651(a)(1) are sustained. Respondent determined that petitioner is subject to additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the deficiency if any part of any deficiency is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the deficiency attributable to negligence or intentional disregard of rules or regulations. Under section 6653(a), "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967). Respondent's determination of negligence *188 is presumed to be correct and the taxpayer has the burden of proving the determination is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Rule 142(a). Petitioner has not met his burden of proving that respondent's determination is erroneous. Petitioner revised the amount of the casualty loss from the fire several times with little to substantiate his claims. Also, he claimed a casualty loss for his automobiles which grossly exaggerated any substantiated basis or change in value in the automobiles due to the vandalism. We find that the entire deficiencies for taxable years 1982, 1983, 1984, and 1985 were due to petitioner's negligence. Accordingly, respondent's determinations of the additions to tax under section 6653(a)(1) and (2) are sustained. Decision will be entered under Rule 155. Footnotes
1. An amount equal to 50 percent of the interest due on the deficiency for the year in question.↩
2. Petitioner claimed a loss of $ 55,000 on his house, and then subtracted the entire $ 12,000 recovered from the insurance company to arrive at $ 43,000. Technically, $ 8,000 was recovered for the house and $ 4,000 was recovered for his personal belongings.↩